IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL J. MCARDLE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 13-1233 |
| | ) | Judge Bissoon |
| VERIZON COMMUNICATIONS INC., | ) | Magistrate Judge Mitchell |
|     Defendant. | ) | |

REPORT AND RECOMMENDATION

I.    Recommendation

It is respectfully recommended that the motion to dismiss filed on behalf of the defendant (ECF No. 3) be granted.

II.    Report

Plaintiff, Paul J. McArdle, brings this action alleging that Defendant, Verizon Communications Inc., defrauded him when he attempted to bring suit in state court to recover for financial damages he claimed to have sustained as a result of advertising for his law practice published in the March 2006 and March 2007 editions of the Greater Pittsburgh Verizon branded white and yellow page telephone directories.

Presently pending before the Court is a motion to dismiss, filed by Defendant. It argues that, on its face, the Complaint manifests that Plaintiff's claims are time barred as a matter of law and therefore must be dismissed, with prejudice. For the reasons that follow, the motion should be granted.

Facts

Plaintiff is a member of the bar of Pennsylvania. Since January 1992, he has continuously maintained an office for the practice of law in downtown Pittsburgh. "From May 1994 until January 2013 [that] law office was located at 1101 Oliver Building, 535 Smithfield

Street, Pittsburgh…" (Compl. ¶¶ 2-4.)[1]  "Since January 2013 McArdle's law office has been located at 239 Fourth Avenue…Pittsburgh." (Compl. ¶ 5.)  McArdle maintains a telephone line, fax line, and internet connection into his law office. (Compl. ¶¶ 6-8.)

Verizon Communications Inc. is the product of the merger of Bell Atlantic Corp. and GTE Corp. (Compl. ¶ 10.)  It commenced operations in the year 2000.  Its headquarters are in New York City, New York. (Compl. ¶¶ 9, 11.)  Its principal business, either directly or through its subsidiaries, is the sale of electronic communications products and services, including telephone line service, cell phone service, fax line service and internet connection service.  In addition, it has, either directly or through its subsidiaries, engaged in the business of producing telephone directory books and selling listings and advertising in its telephone directory books. (Compl. ¶¶ 14-15.)  "Since its advent in the year 2000, Verizon Communications Inc. has maintained a place of business at 400 Oxford Drive in the Borough of Monroeville, Allegheny County, Pennsylvania." (Compl. ¶ 16.)

Plaintiff alleges that Verizon Communications Inc. employs the bad-faith tactic of registering with the Commonwealth a plethora of fictitious names, wholly-owned subsidiary business corporations and wholly-owned subsidiary limited liability corporations so as to confuse its customers and the authorities as to whom they were dealing with. (Compl. ¶ 17.)  In Pennsylvania alone, by 2013 Verizon had registered "sixty-six active fictitious names, wholly-owned subsidiary business corporations, and wholly-owned limited liability corporations" with the Department of State. (Compl. ¶ 18.)  "Moreover between January 2000 and August 2013 Verizon Communications Inc. first registered and then cancelled or withdrew twenty-six further Verizon fictitious names and business corporations with the Commonwealth of Pennsylvania."

---

[1] ECF No. 1.

(Id. ¶ 19.) Plaintiff further alleges that, at the time of its formation the defendant Verizon Communications Inc. caused another corporation to take form under almost exactly the same name as itself, that is, "Verizon Communications, Inc."; that the only difference between the names of the Verizon Communications Inc. named as the defendant here and the second "Verizon Communications, Inc." was the insertion of a comma between the words "Communications" and "Inc." in the name; and that the entity "Verizon Communications, Inc." (having a comma in the name) was merely a red herring or phantom. That is to say, it had no property, no employees, and conducted no business and was formed to confuse and confound persons trying to track down the true parent corporation of the stunningly large family of Verizon corporations and fictitious names. (Compl. ¶¶ 29-32.)

In the autumn of 2005 agents of Verizon Communications Inc. coming from 400 Oxford Drive, Monroeville, solicited McArdle to buy Verizon Yellow Pages advertising and Verizon White Pages listings as they had in past years. (Compl. ¶ 40.) Plaintiff bought. But the Yellow Pages advertisement and White Pages listings ordered by McArdle in the autumn of 2005 were misplaced in the 2006 editions of the Verizon Yellow Pages and Verizon White Pages directories for the Pittsburgh metropolitan area. (Compl. ¶ 41.) These misplacements were the results of "the negligence of the agents and servants of Verizon Communications Inc." (Compl. ¶ 42.)

McArdle ordered further Verizon Yellow Pages advertising and Verizon White Pages listings for the 2007 editions of these telephone directories. (Compl. ¶¶ 45-46.) He alleges that, by reason of negligence, his Yellow Pages advertisement and White Pages listings were out of place in the published directories. (Compl. ¶ 47.) Serious losses allegedly flowed from this. Upon giving notice to his Verizon Communications sales representative of Verizon's mistakes and the losses caused by those mistakes, McArdle made an informal claim for the losses.

(Compl. ¶ 49.) But the "Verizon organization thereupon denied McArdle compensation for the losses caused by the negligence of its agents and servants." (Compl. ¶ 50.)

On May 29, 2007, McArdle instituted suit in the Court of Common Pleas of Allegheny County, Pennsylvania, at No. GD 07-11115, against Verizon Pennsylvania. (Compl. ¶ 51.) On September 11, 2007, a default judgment was entered against Verizon Pennsylvania. (Id. ¶ 52.)

On February 8, 2008, current counsel for Verizon Communications Inc., Melissa Lang and the Philadelphia lawfirm Harvey, Pennington, Ltd. entered their appearance for Verizon Pennsylvania and filed a petition to open the default judgment. On May 1, 2008 Judge R. Stanton Wettick, Jr. ruled to open the default judgment against Verizon Pennsylvania. (Compl. ¶¶ 53-54.) Then on May 9, 2008, McArdle caused an amended complaint to be filed against three defendants: Verizon Communications, Inc., Verizon Pennsylvania, Inc., and Verizon Directories Corporation. (Id. ¶ 55.)

In his amended complaint McArdle described Verizon Communications, Inc. as a business corporation, probably incorporated in the State of Delaware, and having a place of business at 1095 Avenue of Americas in the City of New York and State of New York. He alleged that, through an unincorporated and/or unregistered organization called Verizon Information Services, Verizon Communications, Inc. conducted business in the County of Allegheny and Commonwealth of Pennsylvania from an office at 400 Oxford Drive in the Borough of Monroeville, County of Allegheny, and Commonwealth of Pennsylvania. He described Verizon Communications, Inc. as the mother organization of the general Verizon communications enterprise which was and is composed of a large number of separately incorporated organizations such as Verizon Pennsylvania, Inc. and Verizon Directories Corporation; and apparently unincorporated organizations such as Verizon Information Services.

(Compl. ¶¶ 56-57.)

Plaintiff alleges that counsel who had petitioned to open the default judgment against Verizon Pennsylvania filed an answer to the amended complaint. But instead of answering for "the mother organization of the general Verizon communications enterprise" headquartered in New York City, counsel filed an answer for Verizon Communications, Inc. which she alleged "was a Delaware Corporation which maintained its principal place of business [at] 7900 Xeres AVE South, Suite 1700, Minneapolis, MN 55431, [which had] with[drawn] from doing business in the Commonwealth of Pennsylvania." (Compl. ¶ 59.)

Plaintiff concedes that, in naming the defendant in his amended complaint of May 2008, he had inserted a comma in the name "Verizon Communications, Inc." He alleges that Verizon's counsel seized upon this usage to contend that McArdle had sued a red herring "Verizon Communications, Inc.," which had not conducted any business—in Pennsylvania nor elsewhere—and had never employed anyone, nor owned any property. (Compl. ¶ 59.)

On July 14, 2008 the defendant, Verizon Pennsylvania, Inc., filed its answer to the amended complaint, in which it stated that:

> plaintiff appears to have confused defendant, Verizon Communications, Inc., with a non-party with a very similar name, Verizon Communications Inc. On information and belief, the non-party, Verizon Communications Inc., is a publicly traded corporation which owns certain wholly owned subsidiaries, including, but not limited to, defendant, Verizon Pennsylvania, Inc., and which prior to November 17, 2006, formerly owned defendant, Verizon Directories Corp., as a wholly owned subsidiary.

(Comp. ¶ 63.) Plaintiff contends that this answer was "false; and its allegations were controlled and manipulated by the defendant here, Verizon Communications Inc., the parent corporation of the Verizon business family." (Compl. ¶ 64.) He alleges that:

> Through its manipulations and mispleadings the defendant Verizon Communications Inc., the parent corporation of the Verizon family of legal

5

entities and fictitious names, was attempting to fool the courts of Pennsylvania as to who the true defendant Verizon Communications Inc. was. The true defendant Verizon Communications Inc. was not a paper-only entity theoretically located in Minneapolis, Minnesota, but rather the true parent of the Verizon electronic communications enterprise which at that time had its principal place of business on Avenue of the Americas, New York City, New York.

(Compl. ¶ 65.)

On August 18, 2009, a default judgment was entered against Verizon Directories Corp., for failing to file an answer to the amended complaint of May 9, 2008. (Compl. ¶ 66.) Before this—on February 19, 2009—a judgment for the payment of $6,330 had been entered against Verizon Directories Corp. as a sanction. (Id. ¶ 68.) Plaintiff alleges that, by reason of Verizon Communications' manipulations and misrepresentations, on November 30, 2010, summary judgment was entered for the Minneapolis, Minnesota, Verizon Communications, Inc. and for Verizon Pennsylvania, Inc. (Compl. ¶ 69.) This summary judgment was eventually upheld by the Superior Court of Pennsylvania on March 9, 2012. (Id. ¶ 74; see ECF No. 4 Ex. B.) On January 15, 2013, Plaintiff received notice from the Pennsylvania Supreme Court that, on December 27, 2012, it had entered an order denying his petition for allowance of appeal. (Compl. ¶ 74; see ECF No. 4 Ex. A.)

Meanwhile, McArdle's cause for damages against Verizon Directories Corp. went to trial before an Allegheny County jury on January 13, 2011. That cause was reduced to an award of $200,000 in damages. (Compl. ¶ 67.) Demand for payment of the judgments recorded against Verizon Directories Corp. was thereupon served upon Verizon Communications' counsel. (Compl. ¶ 75.) By letter of January 21, 2013, counsel for Verizon refused to make payment and indeed threatened McArdle if he should "commence execution proceedings." (Id. ¶¶ 76-77.)

Procedural History

Plaintiff filed this Complaint on August 27, 2013 (ECF No. 1). Diversity jurisdiction is

invoked because Plaintiff is a citizen of Pennsylvania; Defendant is Delaware corporation with its principal place of business in New York, New York; and the amount in controversy exceeds the sum of $75,000.00. (Compl. ¶¶ 1, 9, 12-13, & ad damnum clause.) Plaintiff alleges that Defendant organizes its subsidiaries in such a way that he was defrauded and impermissibly deprived of his right to pursue his claims arising out of the publications of the 2006 and 2007 advertising. On September 3, 2013, Defendant filed a motion to dismiss (ECF No. 3), and on September 19, 2013, Plaintiff filed his brief in opposition (ECF No. 9).

Standard of Review

The Supreme Court has issued two decisions that pertain to the standard of review for a motion to dismiss for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. Id. at 679. District courts are required to engage in a two part inquiry:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions…. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show the plaintiff has a

"plausible claim for relief." … In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

"Although a district court may not consider matters extraneous to the pleadings, 'a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.'" U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)). In addition, "[c]ourts ruling on Rule 12(b)(6) motions may take judicial notice of public records." Anspach ex rel. Anspach v. City of Phila., 503 F.3d 256, 273 n.11 (3d Cir. 2007). Thus, the opinion of the Pennsylvania Superior Court and the order of the Pennsylvania Supreme Court, which are referred to in the Complaint, which Defendant has attached to its motion to dismiss and which constitute public records, may be considered without converting the motion into a motion for summary judgment.

Statute of Limitations

The Court of Appeals has stated that:

> Technically, the Federal Rules of Civil Procedure require that affirmative defenses be pleaded in the answer. Rule 12(b) states that "[e]very defense ... shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion...." The defenses listed in Rule 12(b) do not include limitations defenses. Thus, a limitations defense must be raised in the answer, since Rule 12(b) does not permit it to be raised by motion. However, the law of this Circuit (the so-called "Third Circuit Rule") permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978).

Robinson v. Johnson, 313 F.3d 128, 136 (3d Cir. 2002) (footnote omitted). Defendant argues

8

that the Complaint facially shows noncompliance with the limitations period.

The statute of limitations for fraud claims under Pennsylvania law is two years. 42 Pa. C.S. § 5524(7). See Beauty Time, Inc. v. Vu Skin Sys., Inc., 118 F.3d 140, 144-45 (3d Cir. 1997). Even when the discovery rule is applied, "aggrieved parties must still bring their claim within two years of when they learned or should have learned, through the exercise of due diligence, that they have a cause of action." Id. at 148 (footnote omitted).

Since the Complaint in this case was filed on August 27, 2013, the fraud must have occurred on or after August 27, 2011 or the claim is not timely brought. However, as Defendant notes, the Complaint alleges various acts of fraud that all occurred prior to August 27, 2011, namely: the act of organizing subsidiaries in a deceptive way (which occurred at some point prior to 2006); and the act of attempting to confuse matters by telling Plaintiff he had sued "Verizon Communications, Inc." instead of "Verizon Communications Inc." (which was revealed to him no later than July 14, 2008 when the answer to the Amended Complaint was filed in the Court of Common Pleas).

Plaintiff does not contest these facts or the law on the statute of limitations. He argues, however, that the statute of limitations:

> did not begin to run until December 27, 2012, when the Supreme Court of Pennsylvania entered an order refusing to review the "non-precedential decision" of the Superior Court of Pennsylvania affirming the misruling of the Court of Common Pleas of Allegheny County in favor of Verizon Communications, Inc. (The one with the comma.) Not only did Verizon Communications Inc. fool McArdle with its misrepresentations and subterfuge; it fooled the Commonwealth of Pennsylvania as well.
>
> Throughout the course of the litigation upon McArdle's amended complaint of May 9, 2008, in the Court of Common Pleas of Allegheny County, McArdle tried again and again to get the court to recognize that the Verizon Communications under suit there was the New York City based parent corporation of the Verizon organization. For its part, the Verizon organization insisted that the Verizon Communications in suit there was the red herring

9

> Verizon Communications, Inc. of Minneapolis, Minnesota. The whole purpose of the red herring Verizon Communications was to deceive. And deceive it did. Verizon should not be permitted to get away with that deception.
>
> Verizon did, again, succeed in deceiving the Court of Common Pleas of Allegheny County and the Superior Court of Pennsylvania. Or perhaps those courts could not get over their hatreds; and thus let themselves be fooled. Yet it is to absolutely no good that the true parent corporation of the Verizon organization be excused from answering in this court. This District Court should accordingly deny Verizon Communications Inc.'s motion to dismiss; and force Verizon to answer McArdle's complaint on its merits.

(ECF No. 9 at 14-15.)

Plaintiff cites no authority in support of his argument that the statute of limitations did not begin to run until the Pennsylvania Supreme Court denied his petition for allowance of appeal and the Court is unaware of any authority that would support this contention. He argues repeatedly that the courts of Pennsylvania were defrauded and continued to be defrauded, and thus he appears to be implying that the statute of limitations did not begin to run either until the courts discovered this fraud (which never occurred) or until he had no further opportunity to bring the fraud to their attention (which occurred on December 27, 2012).[2]

Yet he is not here in some sort of representative capacity for the benighted state courts. Rather, this is his own lawsuit, filed to recover damages (in excess of $1 million, plus punitive damages also in excess of $1 million, per his ad damnum clause) for acts of fraud committed upon him. He was made aware of this alleged fraud no later than July 14, 2008, thus giving him until July 14, 2010 to bring suit. He did not do so until more than three years thereafter. Thus, on the fact of the Complaint, it is untimely.

---

[2] In fact, he raised this issue with the Pennsylvania Superior Court and that court held that (as he conceded) Verizon Communications Inc. was not a named defendant to the lawsuit and that there was no authority in support of his argument that the trial court should have amended his complaint to name this defendant for him when he did not seek leave to amend. (ECF No. 4 Ex. B at 2-3.)

The Court of Appeals has held that "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips v. County of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008) (citations omitted). In this case, however, Plaintiff should not be given leave to amend his complaint because any amendment would be futile as there is no way to plead that a claim of fraud is timely brought. See Garvin v. City of Phila., 354 F.3d 215, 222 (3d Cir. 2003) (any amendment of complaint would have been futile because it could not have withstood a motion to dismiss on the basis of the statute of limitations).

For these reasons, it is recommended that the motion to dismiss submitted on behalf of Defendant be granted.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by October 18, 2013. Any party opposing the objections shall file a response by November 1, 2013. Failure to file timely objections will waive the right of appeal.

                    Respectfully submitted,

                    s/Robert C. Mitchell
                    ROBERT C. MITCHELL
                    United States Magistrate Judge

Dated: October 4, 2013